**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Gerardo S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 25 C 9800** |
| | ) | |
| **v.** | ) | **Judge Jorge L. Alonso** |
| | ) | |
| **Frank Bisignano, Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gerardo S.,[1] brings this suit against Defendant, the Commissioner of Social Security, seeking judicial review of the denial of his application for disability insurance benefits under the Social Security Act, *see* 42 U.S.C. §§ 405(g), 423. For the reasons set forth below, the Court affirms the decision.

**Background**

Plaintiff worked for many years as an unskilled laborer at a packaging company that made cardboard. He lost his job in October 2021, when he was approximately fifty years old, after the work became more challenging, both physically and mentally. On April 21, 2022, Plaintiff applied for Social Security disability insurance benefits ("DIB"), claiming that he had been disabled since the end of his employment, based on numerous medical issues, including a bad back.

[1] Pursuant to this district's Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

Plaintiff's DIB application was initially denied in November 2022. Seeking reconsideration, Plaintiff asserted in a June 2023 function report that he is unable to work due to back issues, including "bone spurs" and "arthritis," as well as "autism" and short-term memory deficiency. (Certified Administrative Record ("AR") at 291, Dkt. No. 11-1.) In July 2023, Plaintiff underwent a consultative examination by an internal medicine doctor, Dr. Muhammad Rafiq, who observed, among other things, that Plaintiff could get on and off the exam table without difficulty, he could walk greater than fifty feet without support, and he appeared to walk without pain and without any need for assistive devices. Dr. Ranga Reddy, a non-examining consultative examiner, reviewed Plaintiff's medical records and concluded that, despite his impairments, Plaintiff could perform light work with certain postural limitations, including occasional climbing ladders, ropes, or scaffolds and frequent stooping, kneeling, crouching, and crawling. Therefore, the denial of Plaintiff's application was upheld upon reconsideration on September 5, 2023. Plaintiff sought review by an administrative law judge ("ALJ"), and on May 2, 2024, the case came before the ALJ for a hearing, at which Plaintiff testified.

Following the hearing, the ALJ issued a written opinion on June 21, 2024, in which she ruled that Plaintiff is not disabled. The ALJ found that Plaintiff had numerous severe impairments, including lumbar spine degenerative disease, obesity, generalized anxiety disorder, and personality disorder with avoidant features, among other impairments. Plaintiff's impairments, the ALJ found, did not meet, exceed, or medically equal the criteria in 20 C.F.R. § Pt. 404, Subpart P, Appendix 1, and therefore they did not qualify Plaintiff as disabled, in themselves. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, *see* 20 C.F.R. § 404.1567(b), with certain postural and

other limitations, including no climbing or working with hazards or dangerous moving machinery, and only occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling.

The ALJ recognized that, although Plaintiff's back issues were documented in imaging studies performed in 2022, 2023, and as recently as January 2024, examinations had shown considerable mobility and range of motion. Medical records as recent as January 2024 noted that Plaintiff "did not have serious difficulty walking or climbing stairs, dressing, bathing, or doing errands alone." (AR at 32.) Additionally, although testing from 2020 had shown that he had a low immediate memory score of 73, other neurocognitive testing was normal. For a period of a year or a year-and-a-half, he was paid $50 per day to care for a friend's two small children for a few hours, and, according to consultative examinations in July and August 2023, he could perform household tasks, including preparing food, bathing and dressing, shopping, etc.

The ALJ reviewed the numerous medical opinions in the case. She rejected several early opinions as unpersuasive because they had been overtaken by more recent evidence. She found Dr. Reddy's opinion partially persuasive: she agreed with Dr. Reddy that Plaintiff could perform light work, but she concluded that, based on the most recent evidence, including Plaintiff's testimony, he could only do so with the somewhat more restrictive postural limitations described above. She did not find persuasive the January 30, 2024 opinion of Plaintiff's treating physician, Dr. Alkhouli, who had filled out a "Physical Residual Functional Capacity Questionnaire" on Plaintiff's behalf. (AR at 769.) In filling out the questionnaire, Dr. Alkhouli answered numerous questions about how many blocks Plaintiff could walk without rest or pain (one to two), how often he could stand at one time (ten minutes), how many unscheduled breaks he would need to take in

a workday (two to three, for fifteen minutes, due to back pain), and how many days of work he would miss per month (about four), among others. The ALJ found this opinion unpersuasive because it appeared to be based solely on Plaintiff's "subjective reports," rather than on an accompanying physical examination performed by Dr. Alkhouli, and it did not find support in Plaintiff's "treatment history, examination findings, or [Plaintiff's] activities of daily living." (AR at 33.)

Plaintiff's past relevant work, the ALJ found, exceeded his RFC. However, the ALJ concluded, there are jobs that exist in significant numbers in the national economy that he could perform with his impairments and his high-school education, including hotel housekeeper, sorter, and inspector/packer. Therefore, the ALJ ruled, Plaintiff was not disabled. After the Social Security Appeals Council denied review, plaintiff filed this lawsuit, seeking reversal and remand.

**Discussion**

When the Social Security Appeals Council denies an unsuccessful DIB applicant's request for review, "the ALJ's decision becomes the final decision of the [Commissioner]." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The claimant may seek review of a final decision in a federal district court, which may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The reviewing court's role is "extremely limited." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The Court "may reverse the Commissioner's final decision only if it is not supported by substantial evidence or is based on a legal error." *Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(internal quotation marks omitted). Reviewing courts must not reweigh the evidence or substitute their judgment for the ALJ's; they are limited to "review[ing] the ALJ's decision to determine whether it reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). This review is "limited to the reasons articulated by the ALJ in her decision." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded." *Id.*

To determine whether a claimant is disabled, the Social Security Administration follows a five-step review process, sequentially assessing "(1) the claimant's current work activity; (2) [if none,] the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or medically equal the requirements of an impairment listed in the regulations; (4) [if not,] whether the claimant has the [RFC] to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can 'make an adjustment to other work' in the national economy." *Varga v. Colvin*, 794 F.3d 809, 812 n. 2 (7th Cir. 2015) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

In support of remand, Plaintiff argues that the ALJ made the following errors: (1) she relied on an outdated opinion as the basis for her RFC assessment, instead of seeking an additional medical opinion based on Plaintiff's most recent MRI; (2) she rejected as unpersuasive Dr. Alkhouli's opinion, without adequately explaining why it was deficient; and (3) she cited trivial activities of daily living as evidence of Plaintiff's capacity, although Plaintiff's ability to perform such tasks has little bearing on his capacity for work.

## I. January 2024 MRI and RFC Determination

Plaintiff argues that his January 2024 MRI showed that his back problems had significantly worsened, but the ALJ ignored the deterioration in his condition, instead adopting as the basis for her RFC determination the outdated opinion of Dr. Reddy, who had opined on Plaintiff's condition in 2023, at the reconsideration stage. According to Plaintiff, the ALJ should have recruited a medical expert to review his most recent records, including the records of the 2024 MRI.

Unlike typical court proceedings, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). The ALJ is required to "'develop a full and fair record.'" *Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (quoting *Nelms*, 553 F.3d at 1098. The Seventh Circuit has described the relative duties of the claimant and the ALJ as follows:

> Under agency regulations, the claimant has the principal duty to submit evidence relating to the disability claim. *See* 20 C.F.R. § 404.1512(a)(1). The claimant's duty is "ongoing" and covers "any additional related evidence about which [he] become[s] aware." *Id.* The ALJ's duty is supplemental. *See* § 404.1512(b)(1). The ALJ makes an initial request and, if necessary, a follow-up request . . . . *See id.*; § 404.1512(b)(1)(i) & (ii).

*Bertaud v. O'Malley*, 88 F.4th 1242, 1244-45 (7th Cir. 2023). The ALJ's duty to supplement the record is heightened when a claimant is unrepresented. *Nelms*, 923 F.3d at 497. When the claimant is represented by counsel, as here, the ALJ has more latitude to "assume that the applicant is making his strongest case for benefits." *Bertaud*, 88 F.4th at 144-45 (cleaned up); *see Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017), *Primm v. Saul*, 789 F. App'x 539, 544 (7th Cir. 2019).

"When determining whether an opinion is outdated, the critical question is whether the new evidence contains significant and new developments that reasonably could have changed the previous reviewing consultant's assessment." *Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023) (cleaned up); *see Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) ("An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion.") (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). "[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates" prior medical opinions. *Kemplen v. Saul*, 844 F. App'x 883, 887-88 (7th Cir. 2021). Courts recognize, however, that "[i]t is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself, problematic." *Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) (citing *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) ("If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end.")). "The issue, then, comes down to whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the updated] report,' *Stage*, 812 F.3d at 1125, or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen*, 844 F. App'x at 887 (internal citation altered).

ALJs must tread carefully in determining whether new information substantially changes the picture because they—like district court judges—are not qualified to interpret medical

evidence themselves; they need medical experts or physicians to do it for them. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *see Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (explaining that the ALJ "erred when he relied on his own interpretation of [the claimant's MRI"). "[E]ven evidence of 'mild' changes can be potentially decisive in certain circumstances." *Baptist*, 74 F.4th at 443. Generally, however, courts have found new evidence to be "potentially decisive in situations where it reveals a new condition or reflects a severe worsening of a condition," but not when the "new evidence show[s] only mild changes in a claimant's condition," *Shelia M.*, 2021 WL 1784775, at *6 (surveying cases), particularly if the new evidence is isolated. *See Baptist*, 74 F.4th at 443; *see, e.g.*, *Debbie H. v. Kijakazi*, No. 20 C 5121, 2022 WL 2257180, at *3 (N.D. Ill. June 23, 2022) ("When new treatment records are potentially decisive in that they introduce a new symptom and diagnosis in the claimant's case and provide objective support for a claimant's impairments, an ALJ errs by continuing to rely on outdated medical assessments.") (cleaned up); *Neashell G. v. O'Malley*, No. 22 C 3151, 2024 WL 4710886, at *4 (N.D. Ill. Nov. 7, 2024) (finding that the new evidence "did not 'change the picture' to a degree that required an updated medical opinion or rendered the State agency consultants' opinions stale")

In *Keys v. Berryhill*, an unpublished decision, the Seventh Circuit panel suggested that the claimant, who was seeking remand due to the ALJ's failure to obtain an updated medical opinion after the claimant's most recent MRI, needed to be able to "explain" or "provide evidence" to demonstrate how any new developments might "undermine" the prior medical opinions in the case. 679 F. App'x at 481. This is not to say that courts must simply "hold claimants to their burden to prove their limitations," no matter the circumstances; taking that logic to the extreme would nullify

the ALJ's inquisitorial duty altogether. *See Kemplen*, 844 F. App'x at 888. But claimants retain the primary duty to "come forward with evidence that the 'picture has changed," *Snieg v. Bisignano*, No. 25-CV-395, 2025 WL 3677744, at *6 (E.D. Wis. Dec. 18, 2025), and they should be able to explain why any new evidence has the potential to be decisive, *i.e.*, why it will result in a materially different medical opinion than the allegedly outdated one. *Id.*; *see Keys*, 679 F. App'x at 481; *Bond v. Berryhill*, No. 16 C 2018, 2017 WL 1398656, at *3 (N.D. Ill. Apr. 18, 2017) ("Ms. Bond has provided no evidence that her October 2014 CT scan . . . would have changed the opinions of Drs. Mack and Bone."); *Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) ("Important to both the *Keys* and *Bond* decisions was the claimant's failure to demonstrate how the new evidence could have impacted the state agency physicians' opinions."); *Aaron W. v. Bisignano*, No. 25 C 9711, 2026 WL 2593617, at *3 (N.D. Ill. Sept. 2, 2026) ("Even if Plaintiff is correct that the government erred by failing to provide the test to the state agency physicians, he has failed to demonstrate that this evidence represented a significant new development with respect to his allegations of wrist limitations . . . [or] a sea change in his work-related limitations."); *Evangelina G. v. Bisignano*, No. 23 CV 15826, 2026 WL 2531791, at *3 (N.D. Ill. Aug. 27, 2026) ("Even if neither state agency physician reviewed the scans . . . [Plaintiff] 'has not provided any evidence that the [scans] would have changed the doctors' opinions.'") (quoting *Keys*, 679 F. App'x at 481); *Halverson v. Saul*, No. 20-CV-577, 2021 WL 1927530, at *3 (W.D. Wis. May 13, 2021) (explaining that the claimant's case was like *Keys*, 679 F. App'x at 481, in which the Seventh Circuit "faulted the plaintiff for failing to provide 'any evidence that the [new MRI] reports would have changed the doctors' opinions'"). If it were otherwise, claimants could obtain reversal and remand based on "[m]ere conjecture or speculation"

that medical scrutiny might show that new evidence—which can always be obtained, based on the inevitable lag time between any medical opinion and the ALJ's ultimate decision—has changed the picture. *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994); *see John V. v. Bisignano*, No. 25-CV-50096, 2025 WL 3527194, at *3 (N.D. Ill. Dec. 9, 2025) ("Here, Plaintiff has not demonstrated how or why the MMPI-2 results would have "changed the picture so much that it reasonably could have changed" Dr. Rubin's opinion. . . . The Court finds [Plaintiff's] argument speculative." (quoting *Massaglia*, 805 F. App'x at 410)).

To explain why the 2024 MRI should have been so alarming to the ALJ, Plaintiff simply parrots the language of the report. But this is precisely the sort of "medical mumbo jumbo" that the Seventh Circuit has "warned judges not to interpret." *See Baptist*, 74 F.4th at 442. Plaintiff argues that Dr. Alkhouli's mention of the MRI in her notes from Plaintiff's January 30, 2024 appointment should have been enough to the put the ALJ on the alert, but the Court is not convinced. Dr. Alkhouli stated only that Plaintiff "[u]nderwent MRI which revealed bone spurs and arthritis." (AR at 783.) It is unclear whether this comment even referred to the 2024 MRI; it may have referred to the 2022 MRI. Plaintiff used the same terms—"bone spurs" and "arthritis"—to describe his back problems in his 2023 function report, and neither term is actually used in either MRI report. Regardless, the "bone spurs" and "arthritis" were nothing new to Plaintiff, as he had complained about them since before the date of Dr. Reddy's opinion, and Dr. Alkhouli did not suggest that there had been any recent change in Plaintiff's condition. Dr. Alkhouli filled out a Physical Residual Functional Capacity Questionnaire for Plaintiff, but she did not mention the MRI in that document. Presumably Plaintiff could have asked her to address it, but he appears not to have done so. *Gloria S. v. Berryhill*, No. 18 CV 50095, 2019 WL 2435858, at *4 (N.D. Ill. June

11, 2019) ("[N]either plaintiff nor her counsel ever followed up with Dr. Asner to get *his* interpretation of the [MRI] report. He could have provided the medical opinion she claims she was seeking."). The Court finds this omission particularly glaring given that the ALJ specifically asked Plaintiff, at the May 2, 2024 hearing, whether the record was complete, and Plaintiff—through counsel—mentioned nothing that he might add other than certain mental health records. *See Matthew F. v. Kijakazi*, No. 20 C 1830, 2022 WL 79867, at *3-4 (N.D. Ill. Jan. 7, 2022) ("Plaintiff himself did not offer the medical opinions he now claims were lacking. . . . Ultimately, Plaintiff has had ample time over the long arc of this case to procure a medical opinion to strengthen his case, but he has not obtained one.") (cleaned up).

In short, Plaintiff's argument is premised on his own lay interpretation of new medical evidence, and the Court can no more rely on Plaintiff's lay opinion than the ALJ's. "Moreover, 'the reviewing court defers to the ALJ on the question of how much evidence must be gathered. Deference comes from the practical reality that no record is complete – one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.'" *James D. v. O'Malley*, No. 21 C 6577, 2024 WL 956677, at *3 (N.D. Ill. Feb. 28, 2024) (quoting *Bertaud*, 88 F.4th at 1245). If it were otherwise, cases such as this one would never end. *Keys*, 679 F. App'x at 481.

As the Seventh Circuit has "underscored time and again, a claimant bears the burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025); *see Bertaud*, 88 F.4th at 1245. Had the 2024 MRI been accompanied by other evidence of a change in Plaintiff's condition that would have put a layperson on notice that a potentially decisive change was afoot, then the ALJ might have had an obligation to follow up by obtaining a new medical opinion. But

Plaintiff has not pointed to evidence rising to that level here. *See, e.g.*, *Deanna T. v. Bisignano*, No. 4:25-CV-04088, 2026 WL 1270774, at *7 (C.D. Ill. Apr. 9, 2026); *Susan G. v. Kijakazi*, No. 20 C 6110, 2023 WL 2525495, at *4 (N.D. Ill. Mar. 15, 2023), *Halverson*, 2021 WL 1927530, at *3. And the Court is "foreclosed from substituting" its own judgment for the ALJ's, so long as it is supported by substantial evidence. *See Lincoln v. Bisignano*, 173 F.4th 886, 894 (7th Cir. 2026); *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). The ALJ's decision was supported by substantial evidence, and the Court can follow her reasoning, so her decision on this issue provides no basis for reversal.

**II. Dr. Alkhouli's Opinion**

Plaintiff argues that the ALJ erred in evaluating the persuasiveness of his physician, Dr. Alkhouli. Under the relevant regulation, "an ALJ must 'evaluate the persuasiveness' of [a medical] opinion for its 'supportability' and 'consistency.'" *Jones v. Dudek*, 134 F.4th 991, 994 (7th Cir. 2025) (quoting 20 C.F.R. § 404.1520c(a)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." *Id.* § 404.1520c(c)(2). The ALJ rejected Dr. Alkhouli's opinion because she found it was based on subjective complaints and did not find support in Plaintiff's "treatment history, examination findings, or [Plaintiff's] activities of daily living." (AR at 33.) Plaintiff argues that there is no logical bridge from the evidence to this conclusion. According to Plaintiff, Dr. Alkhouli's opinion found support in MRI evidence that indicated "bone spurs" and "arthritis" (AR at 783), and it was

consistent with notes from at least one appointment Plaintiff had with another medical provider, Dr. Samip Morker, in March or April 2024, which seemed to indicate that an examination revealed certain back or lumbar spine issues.

"Ultimately, the ALJ's decision to discount a medical opinion must be supported by substantial evidence." *Denise T. v. Colvin*, No. 24-CV-99, 2024 WL 4972970, at *3 (E.D. Wis. Dec. 4, 2024) (citing *Albert v. Kijakazi*, 34 F.4th 611, 615 (7th Cir. 2022)). Plaintiff invokes the Seventh Circuit's oft-recited "logical bridge" phrase, which "is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). The Court must be able to follow the ALJ's reasoning from the evidence to the conclusion, but ALJs are "'subject to only the most minimal of articulation requirements'—an obligation that extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). To reiterate, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gedatus*, 994 F.3d at 900 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

As an initial matter, Dr. Alkhouli's opinion is in "checklist" form, and, while "checklist observations" cannot be ignored, the Seventh Circuit has recognized that they may be "'less useful to an ALJ' than a doctor's narrative summary." *Susan S. v. O'Malley*, No. 21 C 3388, 2024 WL 1254181, at *5 (N.D. Ill. Mar. 25, 2024) (quoting *Varga*, 794 F.3d at 816); *see Susan S.*, 2024 WL 1254181, at *5 (citing *Trottier v. Saul*, 809 F. App'x 326, 327 (7th Cir. 2020) (suggesting that opinions expressed by way of "checking boxes" might have limited persuasive value) and *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019) (same, regarding "checklist observations")).

Dr. Alkhouli's treatment notes from January 30, 2024, the date of the medical opinion she provided, do not reflect that Dr. Alkhouli performed her own examination of Plaintiff at that appointment. The evidence is, therefore, consistent with the ALJ's reasoning, to the extent the ALJ found the opinion to be "based on [Plaintiff's] subjective reports." (AR. at 33; *see* AR at 783.) The ALJ's conclusion is grounded in the evidence, and the Court finds no flaw in her reasoning on this point. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."), *Fred W. v. Kijakazi*, No. 22 C 3840, 2023 WL 3258483, at *4 (N.D. Ill. May 4, 2023) ("[A]n ALJ may properly discount medical opinions that are based on subjective reports rather than objective evidence."); *see also Joel K. R. v. Kijakazi*, No. 21 C 1905, 2023 WL 2646722, at *4 (N.D. Ill. Mar. 27, 2023) (citing *Rice*, 384 F.3d at 371), *Michelle D. v. Kijakazi*, No. 21 CV 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (affirming decision in which ALJ was not persuaded by medical opinion that "relied more on plaintiff's subjective complaints than on her own objective medical findings to reach her conclusions").

Plaintiff argues that the ALJ cited no evidence in support of, and did not elaborate on, her statement that Dr. Alkhouli's opinion is not supported by Plaintiff's "treatment history, examination findings, or [Plaintiff's] activities of daily living." Although Plaintiff faults the ALJ for not explaining what evidence she relied on, Plaintiff does not, himself, explain what evidence shows that the ALJ was wrong. The only evidence he cites consists of the 2024 MRI and records of at least one appointment Plaintiff had in March or April 2024 with Dr. Morker, who found Plaintiff to have an "antalgic gait" and checked boxes for positive results upon examination for

"paraspinal tenderness," "facet loading," and other lumbar spine issues. (AR at 1016, 1067.) With respect to Dr. Morker, Plaintiff cites records from two different dates, but the notes appear to be identical (AR at 1014, 1065), so it is not clear to the Court whether a single examination was performed, or two. Regardless, the evidence is isolated, and there is the same problem that the Court identified above with respect to the MRI: there does not seem to be any medical opinion interpreting this evidence, so the Court has (and the ALJ appears to have had) no basis for drawing any particular conclusions about what this data means for Plaintiff's RFC. *See Joel K. R.*, 2023 WL 2646722, at *4. Further, Defendant points out that other medical records from other appointments in the same approximate time frame were generally normal, or normal as to some of these issues. (Def.'s Br. at 6, Dkt. No. 21 (citing AR at 871-72, 914, 955, 1067).) As for the 2024 MRI, the Court reiterates that, if Dr. Alkhouli was even aware of it, she gave it only the briefest mention, and even that mention may actually have been in reference to the 2022 MRI. (AR at 783.) As explained in the preceding section of this Opinion, the Court fails to see why the ALJ was required to interpret this brief, ambiguous mention as evidence that there had been some significant change since the 2022 MRI and the 2023 examinations and opinions.

The Court cannot say that substantial evidence did not support the ALJ's conclusion that, under 20 C.F.R. § 404.1520c(a), Dr. Alkhouli's opinion lacked support in the other evidence in the record and was not altogether consistent with it. The ALJ cited, summarized, and discussed a wealth of evidence in her decision, and she did not have to recapitulate that whole discussion in every paragraph of the decision. The Court "reads the ALJ's decision as a whole," and the ALJ "need not repeat analyses that are relevant to multiple parts of [her] decision." *Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019) (citing *Rice*, 384

F.3d at 370 n.5); *see Gedatus*, 994 F.3d at 903 ("An ALJ need not rehash every detail each time he states conclusions on various subjects."). The ALJ intelligibly explained that the weight of the evidence supported the conclusion that Plaintiff could perform light work, with some limitations, even if some evidence—including Dr. Alkhouli's opinion—seemed to point in a different direction. The Court has no trouble following her logic in that regard, and her reasoning is supported by substantial evidence, so her conclusion that Dr. Alkhouli's opinion was unpersuasive does not require remand.

## III. Activities of Daily Living

Plaintiff objects to the ALJ's statement that Plaintiff's treatment was "routine and conservative" (AR at 27), and her reliance on consultative examinations and other medical records demonstrating that he could perform tasks of independent living, including bathing, cooking, shopping, vacuuming, and even babysitting two children. (AR at 32.) According to Plaintiff, these details had little bearing on whether he was disabled and provided no basis for rejecting his subjective allegations of pain and related symptoms that prevented him from working. Here, too, the Court finds no error in the ALJ's reasoning, and her conclusion is grounded in substantial evidence.

While it is true that the ALJ mentioned Plaintiff's daily activities, the paragraph in which she first mentions them starts with the following sentence: "The claimant's daily activities are also consistent with the limitations in the residual functional capacity." (AR at 32.) The ALJ said only that these activities are "consistent" with the limitations she had described in her RFC assessment. Perhaps it would have been improper for the ALJ to reason that, because Plaintiff could perform certain activities of daily living, he was not prevented from working—but that was not actually the

reasoning that the ALJ articulated. *See Deborah M. v. Saul*, 994 F.3d 790-91 (7th Cir. 2021) (explaining that the ALJ properly considered the claimant's activities of daily living not to equate them to "actual work situations" but to assess whether "they corroborated [his disability] claims, and she found that they did not"). Indeed, the paragraph to which Plaintiff appears to object follows a review of medical evidence that spans *six pages*. After reviewing extensive medical evidence, the ALJ found Plaintiff's activities of daily living to be consistent with what the medical evidence showed his limitations to be. Plaintiff has not explained any way in which the ALJ's assessment of this evidence was "patently wrong," so the Court will not overturn her decision on this basis. *See Kathleen C. v. Saul*, No. 19 CV 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) ("Because the ALJ provided some support for her assessment of Plaintiff's subjective claims, which the Court does not find to be patently wrong, this finding is supported by substantial evidence and will not be overturned."); *see also Aujua L. v. Comm'r of Soc. Sec.*, No. 3:24-CV-466, 2025 WL 958316, at *13 (S.D. Ill. Mar. 31, 2025) ("[R]ather than simply disavowing Plaintiff's subjective statements, the ALJ actually imposed additional limitations at least in part because of Plaintiff's subjective statements.")

An ALJ—like this Court—reviews the evidence holistically; it is improper to zero in on one line of evidence and ignore "swaths" of other evidence. *See Lincoln*, 173 F.4th at 894. But that is what Plaintiff is inviting the Court to do, by focusing narrowly on the ALJ's discussion of Plaintiff's activities of daily living. *Id.*; *see Deborah M.*, 994 F.3d at 788-89, 791. Plaintiff does not seem to acknowledge that the ALJ discussed and was partially persuaded by other evidence of even more extensive activities of daily living provided by Plaintiff's sister, who stated that Plaintiff "cared for parents, prepared his meals, . . . cleaned house[,] . . . cooks, shops, does laundry, cleans

the bathroom, and cut the lawn." (AR at 33.) The ALJ was not only entitled but required to consider all this evidence holistically in the final assessment, and the Court fails to see any error in her doing so.

As for Plaintiff's "routine and conservative" treatment, Plaintiff claims that the ALJ cannot draw any conclusions from it without a more detailed inquiry into why Plaintiff did not obtain more aggressive treatment. But, again, Plaintiff distorts the ALJ's reasoning by placing outsize importance on an isolated statement. In the course of reviewing Plaintiff's treatment records, the ALJ began a paragraph by stating that Plaintiff's treatment "has been conservative and routine," and ended the paragraph by noting that Plaintiff had had "no surgery on his back." (AR at 27.) The Court does not read the ALJ to have placed any great importance on these facts; these were observations that formed a factually correct part of her review of Plaintiff's medical records. *See Deborah M.*, 994 F.3d at 790-91 (explaining that ALJ did not impermissibly "play doctor" by "just considering Plaintiff's condition and treatment," without making "any improper inferences"). The Court finds nothing illogical in the ALJ's reasoning.

The overarching point, both with respect to this narrow issue of the evaluation of Plaintiff's activities of daily living and, more broadly, Plaintiff's appeal as a whole, is that Plaintiff essentially invites the Court to reweigh the evidence, which it may not do. *Grotts*, 27 F.4th at 1279; *see Stephanie H. v. Comm'r of Soc. Sec.*, No. 20 C 4600, 2021 WL 2986298, at *5-6 (N.D. Ill. July 14, 2021) ("While the plaintiff tendentiously characterizes the ALJ's view of the record as 'skewed,' in truth, it is the plaintiff's view – which ignores the fact that the vast majority of the medical evidence is unremarkable – that is skewed. . . . A plaintiff can't apply for benefits and dismiss the bulk of her medical record as insignificant.") (internal citation omitted). Plaintiff

repeatedly distorts the ALJ's reasoning by placing undue emphasis on certain issues that were merely one piece of the puzzle, as the ALJ's opinion was a properly holistic assessment of the evidence. *See Lincoln*, 173 F.4th at 893. "The reviewing court must 'give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it.'" *Snieg v. Bisignano*, No. 25-CV-395, 2025 WL 3677744, at *4 (E.D. Wis. Dec. 18, 2025) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Giving the ALJ's opinion a "commonsensical reading," her decision logically follows from substantial evidence, so there is no proper basis for reversal.

## Conclusion

For the reasons set forth above, Plaintiff's motion to reverse the Social Security Administration's decision [17] is denied. The Social Security Administration's decision is affirmed. Civil case terminated.

**SO ORDERED.** **ENTERED: September 21, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**